NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RACHEL B,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>Defendant. | Civil Action No.: 14-cv-1153<br><br>OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court by way of Defendant Horizon Blue Cross Blue Shield of New Jersey's ("Defendant" or "Horizon") motion for summary judgment, see Fed. R. Civ. P. 56(a), against Plaintiff Rachel B. ("Plaintiff") (ECF No. 43); Plaintiff's cross-motion for summary judgment against Defendant (ECF No. 46); and Plaintiff's motion to determine the administrative record (ECF No. 47). The Court has considered the submissions made supporting and opposing the instant motions. The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part; Plaintiff's cross-motion for summary judgment is GRANTED in part and DENIED in part; and Plaintiff's motion to determine the administrative record is DENIED.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

1

## II. BACKGROUND

The parties have submitted briefs, statements of facts pursuant to Local Civil Rule 56.1, declarations, and exhibits reflecting the following factual background.

Plaintiff brings this action under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), claiming Defendant wrongfully denied her benefits under an ERISA-covered health plan (the "Plan") under which she is a covered dependent.

### A. Plaintiff's Health Plan

Plaintiff's Plan covers treatment furnished by a recognized health care provider that is medically necessary and appropriate. (Def.'s 56.1 ¶ 9). Defendant determines medical necessity and appropriateness "at its discretion" according to certain criteria.[2] (Id. ¶ 7).

Defendant contracted with Magellan Behavioral Health ("Magellan") to manage the Plan. (Id. ¶ 26; Pl.'s 56.1 ¶ 18 n.2). The Plan provides claimants an internal appeal process in which Defendant conducts a two-level internal review of denied claims. (Def.'s 56.1 ¶ 10). The Plan also provides an external appeal to an Independent Utilization Management Review Organization ("IURO"), selected by the New Jersey Department of Banking and Insurance ("DOBI"), for claimants who first exhaust the internal process. (Id. ¶ 10; Flynn Decl. Ex. A at HOR-197). If the IURO determines Defendant has deprived an insured of medically necessary treatment, it will inform Defendant and the insured of its determination of what medically necessary treatment the insured should receive. (Def.'s 56.1 ¶ 10). The IURO's treatment plan then becomes binding on

---

[2] These include whether treatment is: "(a) necessary for the symptoms and diagnosis or treatment of the condition, illness or injury; (b) provided for the diagnosis, or the direct care and treatment, of the condition, illness or injury; (c) in accordance with generally accepted medical practice; (d) not for the convenience of a Covered Person; (e) the most appropriate level of medical care the Covered Person needs; and (f) furnished within the framework of generally accepted methods of medical management currently used in the United States." (Flynn Decl. Ex. A at HOR-174).

2

Horizon and the insured, "except to the extent that other remedies are available to either party under state or federal law." (Flynn Decl. Ex. A at HOR-198). The Plan appears to be silent as to the binding effect on Defendant or an insured if the IURO upholds Defendant's denial of coverage.

### B. Plaintiff's Hospitalization

Plaintiff has a history of an eating disorder and other mental health issues. On April 4, 2013, Plaintiff, then age 21, was admitted to the Oliver-Pyatt Center ("OPC") in Miami, Florida, for partial hospitalization treatment ("PHT") with overnight boarding. (Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 13). There, Plaintiff was diagnosed with "eating disorder not otherwise specified," anxiety disorder, attention deficit hyperactivity disorder, and depression. (Pl.'s 56.1 ¶ 8). When admitted, Plaintiff was five feet, three inches tall and weighed 98.6 pounds, well below what her doctors deemed to be her ideal body weight. (Id. ¶ 9). Plaintiff reported skipping meals and snacks, and purging four to five times per week. (Id. ¶ 10).

When Plaintiff was admitted at OPC, Defendant told Plaintiff and OPC that authorization was required for PHT. (Def.'s 56.1 ¶ 17). Defendant provided coverage for PHT at OPC from April 4 to April 29, 2013.[3] (Id. ¶¶ 18, 21). On April 25, 2013, Defendant informed OPC and Plaintiff it had determined not to cover PHT after April 29 because only an intensive outpatient plan ("IOP") was medically necessary. (Id. ¶¶ 21-22). On Plaintiff's behalf, OPC appealed Defendant's denial of PHT for dates after April 29. (Id. ¶¶ 24-25). OPC did not have a discharge plan in place because neither of Plaintiff's parents were willing to take Plaintiff into their respective homes after discharge. (Id. ¶ 30). On May 3, 2013, after an expedited appeal and second level appeal, Defendant affirmed its denial of PHT as no longer medically necessary, but

---

[3] Defendant initially denied PHT as not medically necessary from April 18 to April 29, but reversed its decision after an expedited appeal. (Def.'s 56.1 ¶¶ 20-21).

3

covered Plaintiff's PHT for April 29 to May 2, 2013. (Id. ¶ 38). Defendant informed Plaintiff of this decision by letter dated May 3, 2013, in which Defendant stated, "We have approved continuation of coverage through 05/02/2013 to allow completion of your appeal request. Continuation of coverage from 05/03/2013 forward remains denied." (Flynn Decl. Ex. G-2).

### C. External Appeal

On May 6, 2013, Plaintiff appealed Defendant's denial of PHT coverage to an IURO. (Def.'s 56.1 ¶ 39). The DOBI assigned the appeal to an entity called Permedion. (Flynn Decl. Ex. F at HOR-349). Dr. Lauren Ozbolt, Plaintiff's treating psychiatrist at OPC, submitted to Defendant a letter dated May 6, 2013 in support of the IURO appeal. (Green Decl. Ex. B at RachelB0920-22; Pl.'s 56.1 ¶ 50). This letter states the following:

> It has become clear to staff that [Plaintiff] "under reports her symptoms and struggles." She has a very superficial understanding of her illness and often uses concepts in an inappropriate and inaccurate way. [Plaintiff's previously undiagnosed Pervasive Development Disorder] contributes to [Plaintiff's] inability to manage her distressing and ruminative eating disorder thoughts, as well as her inability to actively follow through . . . .
>
> At this time, [Plaintiff] shows difficulty in maintaining her personal living in staff supported housing, and struggles with social interactions. . . . Should she step down to a lower level of care, it is extremely likely that her isolation will not improve, but worsen. Ability to maintain adequate social support is a self-care skill that [Plaintiff] is not capable of at this time. If [Plaintiff] were to discharge from PHP, it is clear that she would quickly decompensate in the manner that occurred after her discharge from [a previous treatment facility].
>
> According to all parties who have evaluated [Plaintiff], and according to American Psychiatric Association criteria, [Plaintiff] requires support at and after all meals; she requires nutritional management which is medically monitored; she must have all meals and calorie intake monitored; she is at high risk for ongoing restricting and purging. Support at all meals is necessary in order to be able to continue to restore weight and also not return to her previous behaviors. . . .

4

> [Plaintiff] has been working to build trust with the OPC treatment team and setting[.] [B]ecause of the high frequency of sessions, and the highly individualized treatment team approach[,] a disruption to her treatment would be highly destabilizing to her . . . . This would most certainly not result in progression toward recovery; rather it would create disruption and likely cause an exacerbation of depression and worsening of her eating disorder.

(Green Decl. Ex. B at RachelB0920-21).

On May 8, 2013, Permedion upheld Defendant's finding that PHT was no longer medically necessary. (Def.'s 56.1 ¶ 40). In a section labeled "Reviewer's Findings," Permedion noted that Plaintiff "has improved substantially during the course of her stay and there is no indication that she could not be safely and effectively treated at a less intensive level of care." (Flynn Decl. Ex. F at HOR-359). It further stated "[t]he information submitted for review in sum does not indicate why she could not be safely and effectively managed in the context of an IOP." (Id.). Permedion found "[t]here is no indication that this enrollee is partially motivated" in her treatment, and "nothing in the records submitted to indicate that the enrollee has not been adherent to the dietary plan or that there has been any other problem behavior." (Id. at HOR-360). Permedion's report does not address Dr. Ozbolt's letter except to list it as a document it reviewed.[4] (Id. at HOR-358-

---

[4] Permedion indicates that it reviewed the following documents:
- 5-6-13, letter to Permedion from State of New Jersey Department of Banking and Insurance (NJ DOBI)
- Document entitled: Application for the Independent Health Care Appeals Program
- Document entitled: Summary of Case
- 5-3-13, letter to enrollee from Horizon
- 5-2-13, letter to Horizon from Karin R. Lawson, Psy.D.; Oliver-Pyatt Centers
- 4-30-13, letter to enrollee from Louis Parrott, MD, Ph.D., Magellan Behavioral Health (Magellan)
- 4-30-13, letter to enrollee from Larel Doty; Magellan
- Document entitled: Magellan Health Services 2013 Universal PA Template; Initial Review Recommendation (Physician Advisor Review or Administrative Appeal)
- Document entitled: Horizon Level 2 Expedited/Standard Appeal Summary
- Document entitled: Partial Hospitalization, Eating Disorders; Criteria for Admission

5

60). Defendant informed Plaintiff of its intent to abide by Permedion's decision in a letter dated May 9, 2013, stating: "the request for partial hospitalization from 5/03/13 forward at Oliver Pratt [sic] Center has been denied and will remain denied. Please be advised that this is the final level of appeal available to you." (Flynn Decl. Ex. G-3).

### D. Plaintiff's Continued Treatment at OPC

Notwithstanding Defendant's denial of PHT from May 3 onward, Plaintiff continued PHT at OPC until she was discharged on July 3, 2013 and transitioned to an IOP. (Pl.'s 56.1 ¶¶ 60, 67). During her stay at OPC, she continued to struggle with her eating disorder and other psychological conditions. (Id. ¶¶ 61-66). Plaintiff submitted claims to Defendant seeking coverage of Plaintiff's PHT taking place on May 3, 9, 10, 11, and 12, 2013. (Def.'s 56.1 ¶ 43). Plaintiff submitted some of these claims even after Defendant had informed Plaintiff in the May 9 letter of its decision to abide by Permedion's final determination. (Id. ¶¶ 43-44). Plaintiff never submitted claims for PHT to Defendant for dates after May 12, 2013. (Id. ¶ 45).

## III. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled

---

- 5-7-13, letter from enrollee's father to Permedion
- 5-6-13, letter from Oliver-Pyatt Centers to Horizon from Lauren Ozbolt, MD
- Document entitled Client Facesheet
- Document entitled "All Progress notes for a Patient via Date Range From 05/03/2013 to 05/07/2013."
- 05/06/2013 Psychiatric Progress Notes

(Flynn Decl. Ex. F at HOR-358).

6

to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

## IV. **DISCUSSION**

### A. **Appropriate Standard of Review on Summary Judgment**

First, the Court must determine the standard of review for the denial of Plaintiff's benefits. The Court agrees with Defendant that an arbitrary and capricious standard applies.

A challenge to the denial of benefits under 29 U.S.C. § 1132(a)(1)(B) "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "When the administrator has discretionary authority to determine eligibility for benefits . . . the decision must be reviewed under an arbitrary and capricious standard." Id. "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan," which are "construed without deferring to either party's interpretation." Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991). "Discretionary powers may be implied by a plan's terms even if not granted expressly." Id. Moreover, the arbitrary and capricious standard only applies if discretionary authority is actually used. Gritzer v. CBS, Inc., 275 F.3d 291, 296 (3d Cir. 2002) ("[I]t is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer."). The arbitrary and capricious standard also applies to independent persons or entities exercising discretionary authority granted to them under the terms of the ERISA plan. See, e.g., Werbler v. Horizon Blue Cross & Blue Shield of N.J., No. 05-cv-3528, 2006 WL 3511181, at *3 (D.N.J. Dec. 5, 2006) ("Because the Defendant's Plan gave an unaffiliated physician assigned by the IURO full discretion to determine eligibility for benefits, the Court will apply the arbitrary and capricious standard of review.").

Plaintiff does not appear to argue that Defendant lacked discretionary authority. Indeed, the terms of the Plan delegate discretion to Defendant to determine medical necessity, and a medical necessity determination was made here. See supra Part II.A. Rather, Plaintiff contends Defendant did not exercise its discretionary authority under the Plan because Permedion, which

Plaintiff contends had no discretion under the Plan, made the final decision to deny Plaintiff's claims. (Pl.'s Br.[5] at 19-22). The Court disagrees, for several reasons.[6]

First, Permedion did have discretion under the Plan, which it exercised in upholding the denial of Plaintiff's claims. The Plan provides for an external appeal to an IURO selected by the DOBI (Def.'s 56.1 ¶ 10; Flynn Decl. Ex. A at HOR-197), whose decision is binding on Defendant and the claimant if it reverses the denial of benefits. (Flynn Decl. Ex. A at HOR-198). The purpose of this review is for the IURO to determine whether Defendant denied an insured medically necessary care. (Id. at HOR-197-98). This constitutes a grant of discretion to the IURO. Here, Permedion was the IURO that the DOBI selected. (Pl.'s 56.1 ¶¶ 49, 52).

Second, Plaintiff cites no case law supporting the proposition that the Plan's provision for an external appeal divests Defendant of discretionary authority, and the Court is aware of none. To the contrary, case law in this Circuit shows the arbitrary and capricious standard is still applicable even when a plan administrator or trustee's denial of benefits is subject to an external appeal. See, e.g., Mirsky v. Horizon Blue Cross & Blue Shield of N.J., No. 11-cv-2038, 2013 WL 5503659, at *2-4 (D.N.J. Sept. 30, 2013) (applying arbitrary and capricious standard to final determination by an IURO); Hurst v. Siemens Corp. Grp. Ins., 42 F. Supp. 3d 714 (E.D. Pa. 2014) (same); Kohn v. AETNA, No. 12-cv-2920, 2013 WL 1903346, at *2 (D.N.J. May 6, 2013) (same); Werbler, 2006 WL 3511181, at *3 (same).

Finally, Defendant exercised discretionary authority as well. Because Permedion upheld Defendant's denial, its determination ultimately appears not to have been binding on Defendant.

---

[5] Unless otherwise specified, references to briefs are to the parties' submissions regarding the motion and cross-motion for summary judgment.

[6] The Court expresses no opinion as to whether the parties' stipulation that the "arbitrary and capricious" standard of review applies to this case (ECF No. 19) is binding on the Court.

(Flynn Decl. Ex. A at HOR-198). Thus, Defendant could have reversed its denial of Plaintiff's claims, but chose not to do so.

### B. Motion to Determine the Administrative Record

Next, before conducting its review of the decision to deny Plaintiff's claims, the Court addresses Plaintiff's motion to determine the administrative record. Specifically, Plaintiff lists a series of Bates ranges from Defendant's and her document productions that Plaintiff contends "comprise the administrative record to be reviewed by the Court" and moves for the Court to deem these documents to be the administrative record. Plaintiff also moves to exclude from the administrative record two documents Defendant has submitted in support of its motion, namely, the Declaration of Michelle Ganguly and Horizon's February 2013 Health Care Professional Manual, because neither was included in Defendant's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), and were not "generated or considered during the course of the appeals determination." (Br. in Supp. of Pl.'s Mot. to Determine the Admin. Record at 5-6).

"The administrative record in an ERISA action . . . simply consists of the evidence that was before the plan administrator when it made the decision being reviewed." Bicknell v. Lockheed Martin Grp. Benefits Plan, 410 F. App'x 570, 577 n.8 (3d Cir. 2011) (citing Mitchell v. Eastman Kodak, 113 F.3d 433, 440 (3d Cir. 1997)). "Materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion." Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010). However, the Court may consider evidence outside the administrative record for certain purposes, such as evidence of the administrator's "biases and conflicts of interest." Id. at 793-94 (internal quotation omitted).

Here, both parties have submitted evidence that was not before Defendant or Permedion when Plaintiff's claims and appeals were denied—that is, evidence that is not part of the

administrative record. See Bicknell, 410 F. App'x at 577 n.8. To the extent Plaintiff moves for the Court to deem evidence to be part of the administrative record that was not before Defendant or Permedion, this is inappropriate. To the extent Plaintiff moves for the Court to deem evidence that was before Defendant or Permedion to be part of the administrative record, this is unnecessary. To the extent Plaintiff moves to exclude from the administrative record evidence submitted by Defendant in support of its summary judgment motion, this is also unnecessary, because the Court will not treat such evidence as though it was before the administrator if it was not.

This ruling does not preclude the Court from considering evidence outside the administrative record for certain permissible purposes if it is admissible for those purposes under the Federal Rules of Evidence and Civil Procedure, including Fed. R. Civ. P. 26(a)(1)(A)(i).

Accordingly, Plaintiff's motion to determine the administrative record is denied.

### C. Whether Denial was Arbitrary and Capricious

"An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). The Court "is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Doroshow, 574 F.3d at 234 (internal quotation omitted). Although "[a]dministrators of ERISA plans are not required to defer to the opinions of a participant's treating physicians[,] Ricca v. Prudential Ins. Co. of Am., 747 F. Supp. 2d 438, 444 (E.D. Pa. 2010) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003)), they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Nord, 538 U.S. at 834. The Court's review focuses on the "final, post-appeal decision[.]" Funk v. CIGNA Grp. Ins., 648 F.3d 182, 191 n.11 (3d Cir. 2011) (abrogated on other grounds by Montanile v. Bd. of Trustees of Nat'l

Elevator Industry Health Benefit Plan, 136 S. Ct. 651 (2016)). Because Defendant makes different arguments for treatment taking place during different time periods, the Court separately considers three periods of time for which Plaintiff received PHT: from April 30 to May 2, 2013; from May 3 to May 12, 2013, and from May 13, 2013 until Plaintiff's discharge on July 3, 2013.

1. April 30 to May 2, 2013

The parties agree Defendant covered Plaintiff's PHT for these dates. (See Def.'s 56.1 ¶ 38). Summary judgment for Defendant is warranted because Plaintiff was not denied benefits.

2. May 3 to May 12, 2013

Defendant contends its denial of Plaintiff's PHT for these dates was not arbitrary and capricious. Plaintiff counters that Defendant and Permedion acted improperly in affirming Defendant's denial of PHT by (1) failing to address Dr. Ozbolt's May 6, 2013 letter indicating Plaintiff continued to need PHT; (2) applying the wrong definition of medical necessity; and (3) relying on a paper review of Plaintiff's condition rather than giving her a psychiatric evaluation.

The Court agrees with Plaintiff that Permedion acted arbitrarily and capriciously by failing to account for Dr. Ozbolt's May 6, 2013 letter, which repeatedly undermines Permedion's findings.

First, the "Reviewer's Findings" section of Permedion's report stated there was "no indication" Plaintiff could not be treated at a lower level of care. (Flynn Decl. Ex. F at HOR-359). Yet, Dr. Ozbolt wrote that "[i]f [Plaintiff] were to discharge from PHP, it is clear that she would quickly decompensate[,]" that "a disruption to her treatment would . . . . likely cause an exacerbation of depression and worsening of her eating disorder[,]" and that "[s]hould she step down to a lower level of care, it is extremely likely that her isolation will not improve, but worsen." (Green Decl. Ex. B at RachelB0921). Permedion also found no indication Plaintiff "could not be safely and effectively managed in the context of an IOP." (Flynn Decl. Ex. F at HOR-359). Dr.

12

Ozbolt, on the other hand, wrote that "[s]upport at all meals is necessary in order to be able to continue to restore weight and also not return to her previous behaviors[,]" which apparently is not possible in an IOP. (Green Decl. Ex. B at RachelB0921).

Next, Permedion found "[t]here is no indication that this enrollee is partially motivated" in her treatment. (Flynn Decl. Ex. F at HOR-360). To the contrary, Dr. Ozbolt indicated Plaintiff "'under reports her symptoms and struggles' . . . has a very superficial understanding of her illness and often uses concepts in an inappropriate and inaccurate way[,]" which gives rise to "her inability to actively follow through" with treatment. (Green Decl. Ex. B at RachelB0921).

Finally, Permedion found that "nothing in the records submitted to indicate that the enrollee has not been adherent to the dietary plan or that there has been any other problem behavior." (Flynn Decl. Ex. F at HOR-360). Dr. Ozbolt's letter calls this finding into question by attributing Plaintiff's adherence to the plan to OPC's management and supervision rather than Plaintiff's personal improvement. (Green Decl. Ex. B at RachelB0920-21).

"An administrator may not selectively consider and credit medical opinions without articulating its thought processes for doing so." Ricca, 747 F. Supp. 2d at 445. Permedion's repeated failure to explain its implicit rejections of Dr. Ozbolt's opinions and observations was arbitrary and capricious. See id. (arbitrary and capricious for administrator not to "discuss the reasons why probative evidence supporting plaintiff's claim was discounted or rejected" and to "accept the opinions and conclusions of its experts without explanation"). Accordingly, summary judgment in Plaintiff's favor is warranted for claims filed from May 3 to May 12, 2013.[7]

---

[7] Thus, the Court does not reach the question of whether Defendant or Permedion acted arbitrarily and capriciously by applying the wrong definition of medical necessity or by relying on a paper review of Plaintiff's condition rather than giving her a psychiatric evaluation.

13

### 3. May 13 through July 3, 2013

Defendant argues it is entitled to summary judgment for PHT that Plaintiff received during these dates because Plaintiff never submitted claims for the treatment. The Court agrees.

Plaintiffs seeking to enforce the terms of an ERISA benefit plan are required to exhaust plan remedies before filing suit. D'Amico v. CBS Corp., 297 F.3d 287, 290-91 (3d Cir. 2002). By failing to submit claims to Defendant for treatment dates on and after May 13, 2013, Plaintiff failed to exhaust Plan remedies as required before filing an ERISA claim for denied benefits.

Plaintiff does not argue that she exhausted remedies for these dates. Instead, Plaintiff argues exhaustion was futile. (Pl.'s Br. at 22-25). Plaintiff focuses on the language in Defendant's May 9, 2013 letter indicating that "the request for partial hospitalization from 5/03/13 forward at Oliver Pratt [sic] Center has been denied and will remain denied." (Flynn Decl. Ex. G-3). Plaintiff contends the word "forward" indicates Defendant had determined unequivocally that it would not cover Plaintiff's PHT in the future, rendering Plaintiff's future claims submissions unnecessary. (Pl.'s Br. at 22-23). The Court finds this argument unpersuasive.

A plaintiff "is excused from exhausting administrative procedures under ERISA if it would be futile to do so [,]" if she makes a "clear and positive showing of futility." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (internal quotations omitted). To decide whether a plaintiff has made this showing, the Court considers: "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Id. at 250.

14

All five Harrow factors weigh against the Court finding exhaustion to be futile. The first and second factors weigh against futility because Plaintiff did not pursue administrative relief for the denial of coverage for treatment on and after May 13, 2013, thus denying Defendant an opportunity to review more current information about Plaintiff's condition and reevaluate whether PHT had become necessary in the interim. The third factor weighs against futility because Plaintiff provides no evidence of a fixed policy denying benefits; indeed, Defendant had twice previously reversed its decision not to cover earlier dates for Plaintiff's PHT. The fourth and fifth factors weigh against futility because Plaintiff submits no evidence Defendant failed to comply with its own internal administrative procedures, and no testimony of plan administrators.

In light of all five Harrow factors weighing against Plaintiff, the May 9, 2013 letter is insufficient by itself to allow Plaintiff to make a clear and positive showing of futility. Although the language "from 5/03/13 forward" could perhaps be interpreted to mean Defendant would not reconsider approving PHT in the future, even if Plaintiff submitted new medical testimony or evidence of changed circumstances, it is not at all "clear" or "positive" this is what Defendant meant. Even Plaintiff seems initially not to have understood "from 5/03/13 forward" to mean "in perpetuity" because Plaintiff continued to submit claims for PHT for several days after this letter was sent. (Def.'s 56.1 ¶¶ 43-44). Therefore, Plaintiff cannot meet its burden to show futility.

Nor does the Court agree with Plaintiff's argument that her failure to submit claims is excused because under the "notice prejudice" rule Defendant suffered no prejudice. (Pl.'s Br. at 25-26 (citing, e.g., UNUM Life Ins. Co. v. Ward, 526 U.S. 358 (1999)). The "notice-prejudice rule" is a rule based in state law[8] that limits an insurer's ability to assert a defense that it received

---

[8] The parties do not address which state's notice-prejudice rule applies. Plaintiff cites cases (see Pl.'s Br. at 25 n.15) applying California's rule, which requires the insurer to show it "suffered substantial prejudice" from the untimely notice, see Ward, 526 U.S. at 366-67 (internal quotation

15

untimely notice of an insured's claim. Ward, 526 U.S. at 366-67. The Supreme Court in Ward held that California's notice-prejudice rule applied in an ERISA case. Id. at 368-78.

First, this rule seems to apply in cases in which notice to the insurer was late, not where it was never given. Plaintiff's cited cases all support this proposition. See Ward, 526 U.S. at 363; Trs. of Univ. of Penn., 815 F.2d at 895; Pavelovsky v. UNUM Provident Corp., No. 05-cv-1029, 2006 WL 2089958, at *1 & n.1 (W.D. Pa. July 25, 2006); Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797, 802-03 (E.D. Pa. 2000); Garcia v. Fortis Benefits Ins. Co., No. 99-cv-826, 2000 WL 92340, at *8-9 (E.D. Pa. Jan. 24, 2000). This rule limits an insurer's ability to mount a late notice defense, not a lack of notice defense. See, e.g., Ward, 526 U.S. at 364 (under California's rule "an insurer cannot avoid liability although the proof of claim is untimely, unless the insurer shows it was prejudiced by the delay" (emphasis added)).

Second, Defendant has, in fact, been prejudiced by Plaintiff's failure to submit claims for treatment dated May 13, 2013 and later. By failing to notify Defendant of its claims before filing this lawsuit, Plaintiff bypassed the Plan's administrative process through which Defendant could

---

omitted), and Pennsylvania's rule, requiring the insurer to show "actual prejudice." Trs. of Univ. of Penn. v. Lexington Ins. Co., 815 F.2d 890, 896 (3d Cir. 1987). However, neither California nor Pennsylvania law has any apparent connection to this case.

In New Jersey, Defendant's home state, the insurer "must show a likelihood of appreciable prejudice to prevail on a late notice defense[.]" British Ins. Co. of Cayman v. Safety Nat'l Cas., 335 F.3d 205, 212 (3d Cir. 2003) (citing Cooper v. Gov't Emps. Ins. Co., 51 N.J. 86 (1968); Pfizer, Inc. v. Emp'rs Ins. of Wausau, 154 N.J. 187 (1998)). Plaintiff's home state of New York, by contrast, does not put the burden on the insurer to show prejudice. Unigard Sec. Ins. Co. v. N. River Ins. Co., 79 N.Y.2d 576, 581 (1992). Neither does Florida, where Plaintiff was treated. Am. Fire & Cas. Co. v. Collura, 163 So.2d 784, 792-93 (Fla. Dist. Ct. App. 1964). Nevertheless, the Court is satisfied no choice-of-law analysis is necessary here. As explained below, the Court finds that, notwithstanding the notice-prejudice rule articulated in Plaintiff's brief, Plaintiff's failure to exhaust the Plan's remedies is not excused here because Plaintiff never gave notice to Defendant about these claims, and because Defendant was in fact prejudiced. None of these three states' rules appears to exempt a plaintiff from ERISA's exhaustion requirements on these facts. Thus, the outcome is the same whether New York, New Jersey, or Florida law applies.

have produced a written decision that the Court likely would have evaluated under the deferential "arbitrary and capricious" standard. See supra Part IV.A. Moreover, the lack of notice effectively denied Defendant the opportunity to examine Plaintiff from May 13 through July 3, 2013 and scrutinize her treating physicians' conclusions. Thus, by failing to submit these claims, Plaintiff has made it much more difficult for Defendant to defend its determination that Plaintiff's PHT from May 13 through July 3, 2013 was not medically necessary under the Plan.

Thus, notwithstanding the notice-prejudice rule Plaintiff cites, Plaintiff was still required to exhaust its administrative remedies under the Plan. Plaintiff's failure to do so warrants summary judgment in Defendant's favor with respect to Plaintiff's coverage from May 13 to June 3, 2013.

**D.  Rule 56(d)**

The Court may deny or defer a motion for summary judgment if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Plaintiff contends Defendant's summary judgment motion should be denied or deferred because there is outstanding discovery with respect to facts essential to Plaintiff's opposition. (Pl.'s Br. at 35-36). Specifically, Plaintiff claims she cannot oppose the motion before she deposes Ms. Ganguly, receives unredacted copies of the reports of Drs. Harrops and O'Donnell, and learns the identity of the reviewer at Permedion who reviewed Plaintiff's external appeal. (Id.). The Court disagrees.

The Court has reviewed Ms. Ganguly's declaration (Flynn Decl. Ex. B), and the only information contained therein having any bearing on this Court's decision is her contention that Plaintiff filed no claims with Defendant on or after May 13, 2013, a fact Plaintiff does not dispute. Thus, it is not apparent how deposing Ms. Ganguly would help Plaintiff defeat summary judgment.

17

Drs. Harrops and O'Donnell conducted two of Defendant's internal appeals of the denial of Plaintiff's PHT from May 3, 2013 onward. (Flynn Decl. Exs. D and E). The Court is already granting summary judgment in Plaintiff's favor for the period between May 3 and May 12, 2013, and it is not apparent how unredacted copies of these reports would help Plaintiff defeat summary judgment on the administrative exhaustion issue.

The identity of the Permedion reviewer was the subject of a discovery dispute before Magistrate Judge Waldor that has been resolved since the briefing of the present motions. Judge Waldor ruled on December 12, 2016 that Permedion could not be compelled to disclose the reviewer's name. (ECF No. 55). Plaintiff has not appealed Judge Waldor's December 12 order to the undersigned. Because prolonging discovery will not eventually yield this information, Plaintiff's Rule 56(d) motion with respect to the Permedion reviewer's identity is now moot.

### E. Remedy

Having determined that Defendant acted arbitrarily and capriciously in denying Plaintiff's PHT for dates between May 3 and May 12, 2013, the Court "may decide whether to remand its decision to the administrator or directly grant . . . benefits." Fisher v. Aetna Life Ins. Co., 890 F. Supp. 2d 473, 485-86 (D. Del. 2012) (citing Carney v. Int'l Bhd. Of Elec. Workers Local Union Pension Fund, 66 F. App'x 381, 386-87 (3d Cir. 2003)). The Court has "'considerable discretion' in deciding the appropriate remedy." Moskalski v. Bayer Corp., No. 06-cv-568, 2008 WL 2096892, at *10 (W.D. Pa. May 16, 2008) (quoting Kaelin v. Tenet Emp. Benefit Plan, No. 04-cv-2871, 2006 WL 2382005, at *10 (E.D. Pa. Aug. 16, 2006); accord Dunn v. Reed Grp. Inc., No. 08-cv-1632, 2009 WL 2848662, at *19 (D.N.J. Sept. 2, 2009). Remand is appropriate when "the plan administrator has 'fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision.'" Dunn, 2009 WL 2848662, at *19 (quoting Caldwell v. Life Ins. Co. of N. Am.,

18

287 F.3d 1276, 1288 (10th Cir. 2002) (alterations in original); accord Moskalski, 2008 WL 2096892, at *10.

Here, Permedion's report, which Defendant adopted, did not adequately explain why it did not credit Dr. Ozbolt's letter, which largely contradicted its finding that PHT was not medically necessary and appropriate on and after May 3, 2013. See supra Part IV.C.2. In light of the "general preference that eligibility to benefits be determined by the plan, rather than the courts[,]" Moskalski, 2008 WL 2096892, at *10, the Court is reluctant on this record to hold affirmatively that Plaintiff's PHT was medically necessary and appropriate from May 3 to May 12, 2013. Cf. Hirsh v. Boeing Health & Welfare Benefit Plan, 943 F. Supp. 2d 512, 524 (E.D. Pa. 2012) (remanding to administrator for "re-evaluation" when "we cannot discern from the record before us how long after [the date that coverage ceased] A.H. may have continued to require the care provided"). Therefore, the Court remands this matter for Defendant to conduct further administrative review with respect to Plaintiff's claims for May 3 through May 12, 2013, consistent with this Opinion.

## V. CONCLUSION

For the foregoing reasons, the motions are decided as follows:

Defendant's motion for summary judgment (ECF No. 43) is **DENIED** with respect to treatment taking place between May 3 and May 12, 2013, and **GRANTED** in all other respects.

Plaintiff's motion to determine the administrative record (ECF No. 47) is **DENIED**.

Plaintiff's cross-motion for summary judgment (ECF No. 46) is **GRANTED** in that the Court finds Defendant's denial of benefits between May 3 and May 12, 2013 was arbitrary and capricious. This matter is remanded to Defendant for further administrative proceedings consistent with this Opinion. Plaintiff's cross-motion is **DENIED** in all other respects.

An appropriate Order accompanies this Opinion.

_s/Claire C. Cecchi_
**CLAIRE C. CECCHI, U.S.D.J.**

Dated: August 25, 2017